IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SCHENCK PROCESS LLC,<br>a Kansas limited-liability company<br>f/k/a MAC Equipment, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>ZEPPELIN SYSTEMS USA, INC.,<br>a Texas corporation, et al.,<br><br>Defendants. | Case No. 18-00470-CV-W-ODS |

<u>ORDER AND OPINION (1) DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANT
DESHAY CARTER, AND (2) STAYING DEFENDANT ZEPPELIN SYSTEMS USA,
INC.'S DEADLINE TO ANSWER AND RESPOND TO EXPEDITED DISCOVERY</u>

On June 18, 2018, Plaintiff Schenck Process LLC filed this matter alleging a former employee, Defendant DeShay Carter, breached his noncompetition agreement by working for Schenck's competitor, Defendant Zeppelin Systems USA, Inc. Doc. #1, ¶¶ 64-71. Schenck also alleges Carter and Zeppelin misappropriated Schenck's trade secrets, Zeppelin tortiously interfered with Schenck's contractual relationship with Carter, and Zeppelin conspired with Carter to breach the noncompetition agreement. *Id.*, ¶¶ 72-104.

On June 19, 2018, Schenck filed a Motion for Temporary Restraining Order and Preliminary Injunction. Doc. #4. It seeks to enjoin (1) Carter from working for Zeppelin; (2) Zeppelin from seeking advice from, consulting with, employing, or permitting Carter to provide services to or be employed by Zeppelin; (3) Carter from using or disclosing Schenck's confidential information or trade secrets; (4) Zeppelin from seeking, acquiring, using, or disclosing Schenck's confidential information and trade secrets; and (5) Carter from breaching his non-competition and confidential agreement with Schenck.

The Court expedited briefing on Schenck's motion, and scheduled a hearing. Doc. #9. On June 24, 2018, Carter filed his opposition to Schenck's motion. Doc. #11. On June 25, 2018, the Court held a telephonic hearing on the motion, in which counsel

for all parties participated. After the hearing was held, Schenck filed a reply in further support of its motion. Doc. #17. After careful consideration of the parties' filings and arguments presented during the hearing, Schenck's motion for temporary restraining order is denied.[1]

## I.     STANDARD

The Eighth Circuit enumerated four factors a district court must consider when deciding whether to grant or deny a motion for temporary restraining order or motion for preliminary injunction: "(1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981) (en banc).

## II.     DISCUSSION

The most important factor is the movant's likelihood of success on the merits. *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir.), *cert. denied*, 506 U.S. 863 (1992). Accordingly, the Court will concentrate on this factor. Based upon the arguments and authorities presented, the Court, at this time, cannot find Schenck is substantially likely to prevail on the merits of its claims.

With regard to Schenck's breach of contract claim against Carter, it is unclear if the contract is enforceable. Several questions were raised with regard to the contract, including, but not limited to, whether the contract was assigned; whether the contract could be legally assigned from MAC Equipment, Inc. to Schenck; whether changes to Carter's obligations under the contract (assuming the assignment was legally permitted) required Carter's consent; whether the contract is ambiguous; whether the agreement is no more restrictive than is necessary; and whether the contract is narrowly tailored

---

[1] On June 22, 2018, Zeppelin filed a Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Motion to Dismiss for Improper Venue. Doc. #10. On June 24, 2018, Zeppelin and Carter filed a Motion to Transfer Venue. Doc. #12. Schenck's responses to these motions are due on July 6, 2018, and July 9, 2018, respectively. Those motions are not fully briefed. Thus, this Order does not address those motions.

geographically and temporally.  *See, e.g.*, *Symphony Diagnostic Servs. No. 1 Inc. v. Greenbaum*, 828 F.3d 643, 647-48 (8th Cir. 2016) (citations omitted); *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 (Mo. 2006) (en banc).  Given these legitimate, unanswered questions, Schenck does not establish a likelihood of success on the merits of its breach of contract claim.

With regard to its misappropriation of trade secrets claims, Schenck does not show it is likely to succeed on the merits of these claims.  Schenck does not demonstrate Zeppelin and/or Carter misappropriated (or threatened to misappropriate) Schenck's trade secrets.  18 U.S.C. § 1836(b)(1); Mo. Rev. Stat. § 417.455; *see also Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 320 (Mo. banc 2014); *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 683 (8th Cir. 2002).  Schenck argues Carter will inevitably disclose trade secrets in his position with Zeppelin, but "Missouri has not formally adopted the doctrine of inevitable disclosure." *Panera, LLC v. Nettles*, No. 16-1181, 2016 WL 4124114, at *4 (E.D. Mo. Aug. 3, 2016).[2]

---

[2] In *Panera*, the Court found the noncompetition agreement was reasonable and valid, and Panera was likely to succeed on the merits of its claims.  2016 WL 4124114, at * 2-3.  When considering the irreparable harm to Panera absent an injunction, Judge Ross, although noting Missouri and the Eighth Circuit have not formally adopted the doctrine of inevitable disclosure, found the former executive – as Vice President of Information Technology – was privy to confidential strategic planning.  *Id.* at *4.  Thus, his immediate employment with a competitor would likely "lead to such disclosure."  *Id*.  Judge Ross took his analysis one step further stating, even if he did not rely on the inevitable disclosure doctrine, he would reach the same result.  *Id.* at *5.  He stated "where the irreparable harm to Panera may include not only the divulgence of trade secrets, but also the violation of a binding non-competition agreement designed to protect Panera's interests," Panera does not have an adequate remedy at law in that damages would be difficult to calculate.  *Id*.

*Panera* is distinguishable from this matter.  Here, it is far from clear if the noncompetition agreement is valid and enforceable.  In addition, unlike the executive at Panera (who was described as being a "critical leader" and having access to Panera's strategic business planning), Carter was an account executive responsible for marketing, promoting, and selling products to customers in Chemicals & Plastics and PetroChem industries.  Doc. #1, ¶ 29.  Carter was not an executive with access to the types of information described in *Panera*.  Further, unlike Panera's former executive who downloaded confidential and proprietary materials on his personal laptop, created a backup of the confidential and proprietary information, transferred the confidential and proprietary information to a Panera-issued computer, and then returned his personal

Even if the Court were to consider the doctrine of inevitable disclosure, it is unclear if Carter's employment with Zeppelin would require the divulgence of trade secrets.

Similarly, based upon the arguments and the record before the Court, Schenck does not show it is likely to succeed on its claims of tortious interference with contract or civil conspiracy. Schenck's tortious interference of contract claim is based upon the noncompetition agreement signed by Carter. Similarly, Schenck's civil conspiracy claim presupposes the noncompetition agreement is enforceable. But, as set forth *supra*, it remains unclear if the contract is enforceable. Thus, Schenck fails to demonstrate it is likely to succeed on the merits of these claims.

Even if the Court were to find Schenck has shown a likelihood of success on the merits of its claims, the Court cannot grant Schenck the relief it seeks. Schenck does not establish the other *Dataphase* factors weigh in favor of granting Schenck's motion for temporary restraining order. And even if it could establish the other factors weigh in favor of granting a temporary restraining order, Schenck fails to establish how those other factors overcome its failure to establish it has a substantial likelihood of success on the merits, which is the most important factor.

First, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959). Irreparable harm occurs when a party has no adequate legal remedy, typically because the party cannot be fully compensated through a damages award. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Schenck does not set forth any harm it has suffered. Instead, Schenck speculates Carter will inevitably disclose Schenck's trade secrets. But, as set forth above, Missouri has not formally adopted that doctrine. *Panera*, 2016 WL 4124114, at *4. Further, Schenck does not demonstrate it lacks adequate legal remedies, and cannot be fully compensated through a damages award. Accordingly, this factor weighs against entering a temporary restraining order.

Second, the Court must consider the harm to Carter if Schenck's request is granted. *See Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 372 (8th Cir.

---

computer back to factory settings, preventing access to metadata, there is no evidence that Carter has done likewise.

4
Case 4:18-cv-00470-ODS     Document 19     Filed 06/25/18     Page 4 of 6

1991). If the Court were to grant the relief Schenck seeks, Carter would suffer significant economic harm. Carter would be prohibited from working for Zeppelin (or any competitor of Schenck's), and would lose his current (and likely sole) source of income. Schenck has not suffered any harm, and any potential harm is speculative. Thus, the balance of harms weighs against entry of a temporary restraining order.

Finally, the Court must consider the effect a temporary restraining order (as requested by Schenck), if granted, would have on the public interest. The public interest disfavors restraints on trade and employment. *See Carboline Co. v. Lebeck*, 990 F. Supp. 762, 768 (E.D. Mo. 1997). Further, while the public interest is served by enforcing noncompetition agreements, a noncompetition agreement (assuming it is enforceable) must be reasonably necessary to protect the employer's business and must not unreasonably restrict the employee's rights. *Healthcare Servs.*, 198 S.W.3d at 610-14; *Carboline*, 990 F. Supp. at 768. Given the issues identified *supra*, this factor weighs in favor of denying the motion for temporary restraining order.

Upon consideration of the *Dataphase* factors and the arguments and authorities presented by the parties, the Court finds Schenck does not meet its burden of establishing the propriety of a temporary restraining order against Carter. Therefore, Schenck's motion for temporary restraining order against Carter is denied.

Unless and until the Court determines it has personal jurisdiction over Zeppelin, it cannot consider Schenck's motion for temporary restraining order against Zeppelin. *See Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983) (stating "the question of jurisdiction is always vital. A court must have jurisdiction as a prerequisite to the exercise of jurisdiction."); *Zimmerman v. U.S. Football League*, 637 F. Supp. 46, 47 (D. Minn. 1986) (holding a district court cannot issue a temporary restraining order against a party unless the Court has personal jurisdiction over the party). Accordingly, this Order has no effect with regard to Zeppelin.

### III. STAYING DEADLINE TO ANSWER AND RESPOND TO DISCOVERY

On June 20, 2018, the Court granted Schenck's request for expedited discovery, and set July 5, 2018, as the deadline for responses and answers. Doc. #7. Schenck's discovery requests were directed to Zeppelin only. Docs. #6-1, 6-2. Because Zeppelin

5

Case 4:18-cv-00470-ODS    Document 19    Filed 06/25/18    Page 5 of 6

filed a motion to dismiss for lack of personal jurisdiction, the Court stays Zeppelin's deadline to respond and answer Schenck's discovery requests. Once the Court issues its decision on Zeppelin's motion to dismiss, the Court, if necessary, will reset Zeppelin's deadline to answer and respond to Schenck's expedited discovery.

## IV. CONCLUSION

For the foregoing reasons, Schenck's motion for temporary restraining order against Carter is denied. Zeppelin's deadline to respond to Schenck's discovery is stayed pending the Court's decision on Zeppelin's motion to dismiss.

IT IS SO ORDERED.

DATE: June 25, 2018

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT